IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00860-RBJ-MEH

STANLEY HARRIS,

    Plaintiff/Counter Defendant,

v.

AMERIGAS PROPANE, INC.,

    Defendant/Counter Claimant,

PAUL CALLAHAN,
MICHELLE BIMSON,
COLLEEN FAY,
ANDREW PAYTON, and
LEE SAMUELS,

    Defendants.

---

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Michael E. Hegarty, United States

    Before the Court is Defendants' Renewed Motion to Dismiss the First and Fourth Claims for Relief [filed August 6, 2012; docket #28]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket #46]. The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. For the reasons that follow, the Court respectfully RECOMMENDS that the Motion to Dismiss be **granted**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo

**BACKGROUND**

Plaintiff Stanley Harris (Harris) initiated this action on February 29, 2012 in La Plata County District Court. (Docket #1-1.) On April 3, 2012, Defendant AmeriGas Propane, Inc. (AmeriGas) removed the action to this Court pursuant to 28 U.S.C. § 1441(b) governing diversity jurisdiction. (*Id.*)

**I.     Facts**

The following are factual allegations made by Harris in his Second Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Harris was employed by AmeriGas as an account manager based in AmeriGas' Bayfield, Colorado office beginning in 2000. During each of the eleven years that Harris was employed by AmeriGas, he was the company's number one salesman.

During the last several years, Harris was involved in a gas conversion project pursuant to which AmeriGas converted residential use of natural gas to propane gas for several companies, including British Petroleum ("BP"). At various times during the BP conversion project, Harris was informed by his managers that they wanted him unilaterally to "mark up" invoices from AmeriGas to BP, based on how much profit AmeriGas' management wanted to achieve. Since there was no agreement in place that provided the terms and conditions of costs for goods and services provided

---

determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

to BP by AmeriGas as part of the conversion project, Harris did as he was instructed to do and BP never protested any of the invoices. All invoices prepared by Harris as instructed by AmeriGas' management were duly given to AmeriGas management.

At all times, Harris acted at the direction, and with the knowledge, of AmeriGas' management with respect to all material aspects of his sales activities related to the BP conversion project.

In or about July 2011, BP filed a complaint against AmeriGas in Denver District Court alleging, in pertinent part, that amounts billed to BP by AmeriGas relating to the BP conversion project constituted a breach of contract. Shortly after BP filed its lawsuit, AmeriGas suspended Harris' employment with pay, ostensibly because AmeriGas was investigating the allegations contained in BP's complaint. On August 5, 2011, Harris was suspended without pay, and on October 14, 2011, AmeriGas terminated Harris' employment.

As a result of the BP lawsuit, AmeriGas (1) barred Harris from his office; (2) took possession of his personal computer and failed to give it back for months despite repeated demands by Harris and his attorney that the personal computer be returned immediately. The computer was not returned until AmeriGas had cloned the computer's hard drive, giving it and various of AmeriGas' employees access to, and possession of, Harris' personal and confidential information and materials – which Harris knows they accessed – and impairing Harris' ability to conduct his own personal business activities to his financial detriment; (3) failed to pay Harris commissions and other wages and benefits that were due him in violation of applicable Colorado law; and (4) began defaming him throughout the industry, falsely accusing him of criminal activity and embezzlement, all to his detriment.

At one point in its investigation, AmeriGas' representatives met with a subcontractor named Bradley Aukerman and his attorney, and threatened to file a lawsuit against Aukerman and his company, Auk Enterprises, Inc. d/b/a Creative Plumbing and Heating, as well as Aukerman personally, unless Aukerman "gave Stan Harris up" and implicated Harris in wrongdoing that Aukerman knew, and AmeriGas knew, or should have known, never occurred.

Aukerman refused to accede, and on or about December 2, 2011, AmeriGas brought an action against Auk Enterprises and Aukerman in La Plata County District Court, alleging eleven claims, including but not limited to fraud, conversion, civil theft, civil conspiracy, unjust enrichment, negligent misrepresentation and punitive damages. On information and belief, Harris understands that AmeriGas brought this action against Aukerman and his company, despite the fact that there is no basis for allegations of wrongdoing against Aukerman and his company, for the purpose of invoking AmeriGas' insurance coverage for the BP action against AmeriGas in Denver District Court.

Defendants Callahan, Bimson, Fay, Payton and Samuels, all employees of AmeriGas, conspired together to scapegoat Harris for any alleged wrongdoing with respect to services provided by AmeriGas to BP pursuant to the BP conversion project, falsely accusing him of wrongdoing, defaming him, terminating his employment without cause, and attempting to pressure others into bearing false witness against Harris, all with the specific purpose to protect themselves from allegations of, and liabilities arising from, their own wrongdoing in their conduct, direction and management of the BP conversion project and the pricing thereof, and to invoke AmeriGas' insurance coverage for the BP action against AmeriGas in Denver District Court.

**II.     Procedural History**

After removal of the action to this Court, AmeriGas filed a motion to dismiss the first, second and fifth claims for relief stated in the original complaint (*see* docket #15), then, upon permission to extend the deadline, filed an answer to the remaining claims in the complaint (*see* docket #19). On June 19, 2012, Judge Jackson granted Harris' request to amend the complaint and denied as moot the pending motion to dismiss. (Docket #25.) Harris then filed the operative "Second" Amended Complaint[2] on July 21, 2012, alleging generally that Defendants intentionally inflicted emotional distress upon him, intentionally withheld sales commissions, invaded his privacy, and conspired to "scapegoat" him in the BP conversion project.

AmeriGas filed the present motion to dismiss Harris' First (outrageous conduct) and Fourth (civil conspiracy) Claims for Relief on August 6, 2012. AmeriGas and Harris completed briefing on the motion on September 14, 2012; however, once the individual Defendants were served, they moved for and were granted joinder in the present motion. (Dockets #42 and #43). The Court has reviewed the operative pleading, the motion, the briefs and the applicable law, and is sufficiently advised in the premises.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires

---

[2]There is no indication in the record of a First Amended Complaint nor explanation for the characterization of the operative complaint as a "Second" Amended Complaint.

5

a two-prong analysis.  First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id.* at 678-80.  Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).  "The nature and specificity of the allegations required to state a plausible claim will vary based on context."  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).  Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim.  *Khalik*, 671 F.3d at 1191 .

## ANALYSIS

Defendants argue that Harris fails to state claims for intentional infliction of emotional distress ("outrageous conduct") and for civil conspiracy.  Keeping the applicable legal standard in mind, the Court will analyze each of these claims in turn.

**I.      Outrageous Conduct**

"Although the question whether conduct is outrageous is generally one of fact to be determined by a jury, it is the initial responsibility of a court to determine whether reasonable persons could differ on the question."  *McCarty v. Kaiser-Hill Co., L.L.C.*, 15 P.3d 1122, 1126

(Colo. App. 2000). In Colorado, to establish an outrageous conduct claim (which falls under the common law tort of intentional infliction of emotional distress), a plaintiff must allege sufficient facts demonstrating that the defendant (i) intentionally or recklessly; (ii) engaged in extreme and outrageous conduct; (iii) that caused severe emotional distress. *Id.* "The level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high." *Id.*

"Liability [for outrageous conduct] has been found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*; *see also Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (en banc) (allegations "that Coors engaged in an extensive criminal conspiracy involving illegal drugs and money laundering and that Coors fired [plaintiff] to scapegoat him for these crimes" was not outrageous as a matter of law); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo. 1988) (the acts must so arouse resentment in average members of the community as to lead them to exclaim, "Outrageous!"). "Proof of the tort of outrageous conduct must consist of either an extreme act, both in character and degree, or a pattern of conduct from which the ineluctable conclusion is the infliction of severe mental suffering was calculated or recklessly and callously inflicted." *Gard v. Teletronics Pacing Sys., Inc.*, 859 F. Supp. 1349, 1354 (D. Colo. 1994).

Here, Harris contends that the totality of the following conduct by Defendants supports his claim for outrageous conduct: Harris was scapegoated to cover up allegedly illegal invoice pricing; AmeriGas has acted as if it had no knowledge of Harris' pricing despite the fact that all of Harris' managers and supervisors knew about Harris' material actions and directed him to take those

7

actions; AmeriGas took Harris' personal computer, which AmeriGas knew contained personal and business information and materials, and accessed private and personal materials about which AmeriGas commented to Harris; AmeriGas refused to return the computer for several months and refused to allow a third party to copy the materials pertinent to AmeriGas; AmeriGas attempted to extort Brad Aukerman into providing false testimony against Harris and implied that it would bring suit against him if failed to do so, then did bring suit; AmeriGas terminated Harris' employment without cause, despite his service, awards and commendations; AmeriGas failed to pay Harris commissions on earned sales; AmeriGas' employees are likely the source of rumors that Harris was jailed for embezzlement; and the individual Defendants conspired to place the blame on Harris for any acts or omissions that led to the BP lawsuit. *See* Response, docket #30 at 10-11.

The Court concludes that Defendants' alleged conduct, whether considered separately or in total, does not rise to the extremely high level of outrageousness required to state a claim for intentional infliction of emotional distress. First, Harris fails to explain how any conduct directed toward another party – here, Aukerman – has caused him severe emotional distress. *See Bradshaw v. Nicolay*, 765 P.2d 630, 632 (Colo. App. 1988). Moreover, Harris fails to state whether he is an immediate family member of Aukerman's, and there is no indication in the Second Amended Complaint that he is. *Id.*

Second, Harris' allegations that AmeriGas acted as if it did not know about the invoice pricing and terminated Harris' employment, and that its employees conspired to place blame on Harris, all relate to, or are part of, the allegation that Harris was scapegoated for any actions leading to the BP lawsuit. As set forth herein, conspiring in illegal activity and terminating a person's employment to "scapegoat" him for the activity do not constitute outrageous conduct. *Floyd*, 978

P.2d at 666.

Third, Harris' allegation that AmeriGas failed to pay him earned commissions and accessed private information on a personal computer support his claims for violation of the Colorado Wage Claim Act and invasion of privacy, respectively. Harris fails to allege how AmeriGas' taking possession for several months of a computer containing both business and personal information, and accessing such personal information, caused him severe emotional distress.[3] That is, there is nothing in Harris' allegations that would lead a reasonable person to conclude that AmeriGas' access of Harris' unspecified "personal" information, itself, was extremely outrageous.

Finally, Harris' allegation that the individual Defendants are "likely" the source for rumors that he was jailed for embezzlement do not rise to the necessary high level of outrageousness. In *Churchey*, the Colorado Supreme Court reversed summary judgment on a defamation claim by a plaintiff who alleged she had been terminated from employment based upon a false accusation of dishonesty, but affirmed summary judgment as to the plaintiff's claim of outrageous conduct. *Churchey*, 759 P.2d at 1347, 1351. The court considered and rejected as "outrageous" the plaintiff's allegations that the defendant fired her for dishonesty, failed to follow its policies, caused her to have to tell prospective employers she was fired for dishonesty, required her to go to the defendant's medical center to fill out forms while she was sick, allowed its nurse practitioner to override her private doctor's instructions, and accepted her supervisor's false statement that she failed to tell him when she had been released to work. *Id.* at 1350. Likewise, in *Dorr v. C.B. Johnson, Inc.*, 660 P.2d 517, 521 (Colo. App. 1983), the court affirmed a grant of summary judgment to a defendant on a

---

[3]Harris does allege that AmeriGas' possession of his computer impaired his ability to conduct his own personal business activities to his "financial" detriment, but he does not allege that such impairment caused him emotional distress.

claim of outrageous conduct where, following a traffic accident involving one of the plaintiffs, the defendants had, among other things, published unspecified slanderous statements about the plaintiff's driving in a report submitted to the Colorado Department of Labor and Employment and had made statements to third parties falsely alleging that the plaintiff had been intoxicated at the time of the accident. The court specifically held that the totality of the plaintiffs' allegations – that defendants converted the plaintiff's property left in the vehicle, refused to return the plaintiffs' phone calls, refused to provide transportation for plaintiff's return home from the hospital where his injuries were treated, filed an accident report containing false and libelous statements concerning plaintiff's driving, published slanderous statements to persons unrelated to the workers' compensation proceedings, and delayed plaintiff's compensation by late filings with the government – "could not reasonably be regarded as 'so extreme and outrageous' as to permit recovery in [the] action." *Id.*

Considered together, these cases suggest that false accusations that a person has engaged in criminal conduct fail to rise to the level of outrageous conduct. *See Partminer Worldwide, Inc. v. Siliconexpert Techs., Inc.*, No. 09-cv-00586-MSK, 2010 WL 502718, at *4 (D. Colo. Feb. 10, 2010) (finding insufficient a counterclaimant's allegations that the plaintiff accused him of being a leak of proprietary information to competitors and subjected him to the litigation). As such, this Court must conclude that Harris' allegation concerning Defendants' false accusations of embezzlement does not constitute outrageous conduct.

Even considering the totality of the allegations, the Court does not see "a pattern of conduct from which the ineluctable conclusion is the infliction of severe mental suffering was calculated or recklessly and callously inflicted." *Gard*, 859 F. Supp. at 1354. Again, most of the allegations

10

relate to AmeriGas' alleged "scapegoating" of Harris and, even if not related, do not together demonstrate the Defendants' calculated efforts to inflict severe mental suffering upon Harris. *See Churchey* and *Dorr, supra.* Accordingly, this Court recommends that the District Court grant Defendants' motion to dismiss Harris' First Claim for Relief.

## II.     Civil Conspiracy

Harris alleges that, "on information and belief," the individual Defendants "conspired together to scapegoat Mr. Harris for any alleged wrongdoing with respect to services provided by AmeriGas to BP pursuant to the BP conversion project, falsely accusing him of wrongdoing, defaming him, terminating his employment without cause, and attempting to pressure others into bearing false witness against Mr. Harris, all with specific objects in mind to protect themselves from allegations of, and liabilities arising from their own wrongdoing arising from their own conduct, direction and management of the BP conversion project and the pricing thereof, and to invoke Defendant AmeriGas' insurance coverage for the BP action against Defendant AmeriGas in Denver District Court." Second Amended Complaint, ¶ 20, docket #27.

To prove a claim for civil conspiracy, Harris must show: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result. *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995). Harris must present evidence of an agreement; the court may not infer its existence. *Id.* "Additionally, the purpose of the conspiracy must involve an unlawful act or unlawful means. A party may not be held liable for doing in a proper manner that which it had a lawful right to do." *Id.*; *see also Magin v. DVCO Fuel Sys., Inc.*, 981 P.2d 673, 675 (Colo. App. 1999) ("liability may be established for civil conspiracy even where only lawful acts were performed if the purpose or

goal is unlawful").

Here, Harris has clearly alleged elements (1), (2) and (5). That is, the individual Defendants make up two or more persons, the objects to be accomplished are to protect themselves from liability and to invoke AmeriGas' insurance coverage, and the damages are those resulting from any unlawful overt acts. With respect to element (4), Harris alleges the Defendants falsely accused him of wrongdoing and defamed him, and terminated his employment without cause.[4] However, Harris alleges no claims for wrongful termination or defamation. Civil conspiracy is a derivative cause of action that is not actionable per se. *Double Oak Constr., L.L.C., v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003). "The essence of a civil conspiracy claim is not the conspiracy itself, but the actual damages resulting from the acts done in furtherance of the conspiracy." *Id.* (quoting *Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049, 1055 (Colo. 1995)). Thus, if "the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself." *Id.* Therefore, the Court must determine whether Harris' allegations state causes of action for wrongful termination and/or defamation.

Here, Harris alleges no cause of action for wrongful termination in the Second Amended Complaint, although he alleged such claim in his original complaint. *See* docket #5. To the extent Harris dropped the claim recognizing that his facts fail to support such claim, the Court agrees. A plaintiff must prove the following to establish a claim for wrongful discharge under the public policy exception: (1) the employer directed the employee to perform an illegal act as part of the employee's work related duties; (2) the action directed by the employer would violate a statute or clearly

---

[4]Harris also alleges the individual Defendants "attempt[ed] to pressure others into bearing false witness against Mr. Harris"; however, Harris does not specify how this is an "unlawful overt act" and the Court does not perceive such conduct as necessarily unlawful.

expressed public policy; (3) the employee was terminated as a result of opposing or refusing to perform the illegal act; and (4) the employer was aware or should have been aware that the employee's opposition or refusal was based upon the employee's reasonable belief that the act was illegal. *Floyd,* 978 P.2d at 667. In this case, there is no indication that Harris overtly "opposed" or "refused" to perform the allegedly unlawful acts.

Harris likewise asserts no claim for defamation in the Second Amended Complaint. "In Colorado, a plaintiff must prove the following elements in asserting a cause of action for defamation: (1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication." *Greenwood Trust Co. v. Conley*, 938 P.2d 1141, 1153 n. 1 (Colo. 1997). A statement is defamatory *per se* if it accuses the subject, *inter alia,* of a crime or of engaging in conduct "incompatible with his business, trade, profession, or office." *Denver Publ'g Co.v. Bueno*, 54 P.3d 893, 899 n. 9 (Colo. 2002). *Per se* defamatory statements may include (1) the commission of a criminal offense, (2) a loathsome disease, (3) a matter incompatible with an individual's business, trade, profession, or office, or (4) serious sexual misconduct. *Id.; Gordon v. Boyles,* 99 P.3d 75, 79 (Colo. App. 2004) (citations omitted).

In this case, Harris alleges in the operative pleading that Defendants "began defaming him throughout the industry, falsely accusing him of criminal activity and embezzlement, all to his detriment." Second Amended Complaint, ¶ 17, docket #27 at 4. Taking them as true, Harris' allegations may support a cause of action for defamation *per se* in Colorado.

However, Harris fails to allege element (3) for a civil conspiracy, the individual Defendants'

13

agreement or "meeting of the minds" on their course of action. *See Scott v. Hern*, 216 F.3d 897, 918 (10th Cir. 2000) (plaintiff must allege a "course of conduct and other circumstantial evidence providing some indicia of agreement in an unlawful means or end") (citations omitted). Harris' allegation that "on information and belief, Defendants ... conspired together to scapegoat Mr. Harris" is merely conclusory and, thus, insufficient. "[T]he well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," and, therefore, "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Consequently, Harris fails to state a claim for civil conspiracy and this Court respectfully recommends that the District Court grant the Defendants' motion to dismiss Harris' Fourth Claim for Relief.

## CONCLUSION

Here, the Plaintiff has failed to state cognizable claims for intentional infliction of emotional distress (outrageous conduct) and civil conspiracy in this case. Accordingly, the Court respectfully RECOMMENDS that Defendants' Renewed Motion to Dismiss the First and Fourth Claims for Relief [filed August 6, 2012; docket #28] be **GRANTED** as set forth herein.

Respectfully submitted this 5th day of December, 2012, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge